**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

HAROLD BURKE,

     *Plaintiff*,

v.                           CASE NO. 2:13–CV–13824-VAR–PTM

COMMISSIONER OF            DISTRICT JUDGE VICTORIA ROBERTS
SOCIAL SECURITY,        MAGISTRATE JUDGE PATRICIA T. MORRIS

     *Defendant*.
_____/

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**[1]

## I.    RECOMMENDATION

In light of the entire record in this case, I suggest that substantial evidence supports the Commissioner's determination that Plaintiff is not disabled. Accordingly, **IT IS RECOMMENDED** that Plaintiff's Motion for Summary Judgment be **DENIED**, that Defendant's Motion for Summary Judgment be **GRANTED**, and that the findings of the Commissioner be **AFFIRMED**.

## II.    REPORT

### A.    Introduction and Procedural History

Pursuant to 28 U.S.C. § 636(b)(1)(B), E.D. Mich. LR 72.1(b)(3), and by Notice of Reference, this case was referred to this magistrate judge for the purpose of reviewing the Commissioner's decision denying Plaintiff's claim for Disability Insurance Benefits ("DIB").

---

[1]The format and style of this Report and Recommendation are intended to comply with the requirements of the E-Government Act of 2002, Pub. L. 107-347, 116 Stat. 2899 (Dec. 17, 2002), Fed. R. Civ. P. 5.2(c)(2)(B), E.D. Mich. Administrative Order 07-AO-030, and guidance promulgated by the Administrative Office of the United States Courts found at: http://www.uscourts.gov/RulesAndPolicies/JudiciaryPrivacyPolicy/March2008 RevisedPolicy.aspx. This Report and Recommendation only addresses the matters at issue in this case and is not intended for publication in an official reporter or to serve as precedent.

This matter is currently before the Court on cross-motions for summary judgment. (Docs. 11, 12.)

Plaintiff Harold Burke was 53 years of age at the time of the most recent administrative hearing. (Transcript, Doc. 8 at 34.)  Plaintiff worked as an engine tester in the automotive industry for 32 years and doing lawn care on a golf course for 2 years. (Tr. at 206.)  Plaintiff filed the present claim on April 7, 2011, alleging that he became unable to work on October 21, 2009. (Tr. at 159.) The claim was denied at the initial administrative stages. (Tr. at 93.)  In denying Plaintiff's claims, the Commissioner considered visual disturbances and affective disorders as possible bases for disability. (*Id*.)  On April 26, 2012, Plaintiff appeared before Administrative Law Judge ("ALJ") Anthony Smereka, who considered the application for benefits *de novo*. (Tr. at 9-27, 28-66.) In a decision dated September 26, 2012, the ALJ found that Plaintiff was not disabled. (Tr. at 23.) On October 5, 2012, Plaintiff requested a review of this decision. (Tr. at 6-8.)

The ALJ's decision became the final decision of the Commissioner, *see Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 543-44 (6th Cir. 2004), on July 8, 2013, when the Appeals Council denied Plaintiff's request for review. (Tr. at 1-5.) On September 9, 2013, Plaintiff filed the instant suit seeking judicial review of the Commissioner's unfavorable decision.

**B.      Standard of Review**

In enacting the social security system, Congress created a two-tiered structure in which the administrative agency handles claims and the judiciary merely reviews the determination for exceeding statutory authority or for being arbitrary and capricious. *Sullivan v. Zebley*, 493 U.S. 521, 528 (1990), *superseded by statute on other grounds*, Personal Responsibility and

Work Opportunity Reconciliation Act of 1996, Pub. L. No. 104-193, 110 Stat. 2105. The administrative process itself is multifaceted in that a state agency makes an initial determination that can be appealed first to the Social Security Agency itself, then to an ALJ, and finally to the Appeals Council. *Bowen v. Yuckert*, 482 U.S. 137, 142 (1987). If relief is not found during the administrative review process, the claimant may file an action in federal district court. *Id.*; *Mullen v. Bowen*, 800 F.2d 535, 537 (6th Cir. 1986) (en banc).

This Court has original jurisdiction to review the Commissioner's final administrative decision pursuant to 42 U.S.C. § 405(g). Judicial review under this statute is limited in that the Court "'must affirm the Commissioner's conclusions absent a determination that the Commissioner has failed to apply the correct legal standards or has made findings of fact unsupported by substantial evidence in the record.'" *Longworth v. Comm'r of Soc. Sec.*, 402 F.3d 591, 595 (6th Cir. 2005) (*quoting Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004); *see also Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 528 (6th Cir. 1997). In deciding whether substantial evidence supports the ALJ's decision, "we do not try the case *de novo*, resolve conflicts in evidence, or decide questions of credibility." *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007); *see also Garner v. Heckler*, 745 F.2d 383, 387 (6th Cir. 1984).

"It is of course for the ALJ, and not the reviewing court, to evaluate the credibility of witnesses, including that of the claimant." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 247 (6th Cir. 2007); *see also Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 542 (6th Cir. 2007) (noting that the "ALJ's credibility determinations about the claimant are to be given great weight, 'particularly since the ALJ is charged with observing the claimant's demeanor and credibility'") (quoting *Walters*, 127 F.3d at 531 ("Discounting credibility to a certain degree is

appropriate where an ALJ finds contradictions among medical reports, claimant's testimony, and other evidence.")); *Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 475 (6th Cir. 2003) ("[A]n ALJ is not required to accept a claimant's subjective complaints and may . . . consider the credibility of a claimant when making a determination of disability."). "However, the ALJ is not free to make credibility determinations based solely upon an 'intangible or intuitive notion about an individual's credibility.'" *Rogers,* 486 F.3d at 247 (quoting SSR 96-7p, 1996 WL 374186, at *4).

If supported by substantial evidence, the Commissioner's findings of fact are conclusive. 42 U.S.C. § 405(g). Therefore, a court may not reverse the Commissioner's decision merely because it disagrees or because "'there exists in the record substantial evidence to support a different conclusion.'" *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006) (quoting *Buxton v. Halter*, 246 F.3d 762, 772 (6th Cir. 2001)); *see also Mullen*, 800 F.2d at 545. The scope of a court's review is limited to an examination of the record before the ALJ only. *Bass,* 499 F.3d at 512-13; *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Substantial evidence is "more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cutlip v. Sec'y of Health & Human Servs.*, 25 F.3d 284, 286 (6th Cir. 1994); *see also Jones*, 336 F.3d at 475. "The substantial evidence standard presupposes that there is a '"zone of choice"' within which the Commissioner may proceed without interference from the courts." *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994) (citations omitted) (quoting *Mullen*, 800 F.2d at 545).

When reviewing the Commissioner's factual findings for substantial evidence, a reviewing court must consider the evidence in the record as a whole, including that evidence which might subtract from its weight. *Wyatt v. Sec'y of Health & Human Servs.*, 974 F.2d 680, 683 (6th Cir. 1992). "Both the court of appeals and the district court may look to any evidence in the record, regardless of whether it has been cited by the Appeals Council." *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). There is no requirement, however, that either the ALJ or the reviewing court discuss every piece of evidence in the administrative record. *Kornecky v. Comm'r of Soc. Sec.*, 167 F. App'x 496, 508 (6th Cir. 2006) ("'[A]n ALJ can consider all the evidence without directly addressing in his written decision every piece of evidence submitted by a party.'" (quoting *Loral Defense Systems-Akron v. N.L.R.B.*, 200 F.3d 436, 453 (6th Cir. 1999)); *Van Der Maas v. Comm'r of Soc. Sec.*, 198 F. App'x 521, 526 (6th Cir. 2006).

## C.    Governing Law

The "[c]laimant bears the burden of proving his entitlement to benefits." *Boyes v. Sec'y of Health & Human Servs.*, 46 F.3d 510, 512 (6th Cir. 1994); *accord Bartyzel v. Comm'r of Soc. Sec.*, 74 F. App'x 515, 524 (6th Cir. 2003). There are several benefits programs under the Act, including the Disability Insurance Benefits ("DIB") program of Title II, 42 U.S.C. §§ 401-434, and the Supplemental Security Income ("SSI") program of Title XVI, 42 U.S.C. §§ 1381-1385. Title II benefits are available to qualifying wage earners who become disabled prior to the expiration of their insured status; Title XVI benefits are available to poverty stricken adults and children who become disabled. F. Bloch, *Federal Disability Law and Practice* § 1.1 (1984). While the two programs have different eligibility requirements, "DIB and SSI are

5

2:13-cv-13824-VAR-PTM   Doc # 13   Filed 09/23/14   Pg 6 of 19   Pg ID 509

available only for those who have a 'disability.'" *Colvin v. Barnhart*, 475 F.3d 727, 730 (6th

Cir. 2007). "Disability" means:

> inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months . . . .

42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A) (DIB); 20 C.F.R. § 416.905(a) (SSI).

The Commissioner's regulations provide that disability is to be determined through the

application of a five-step sequential analysis:

> Step One:  If the claimant is currently engaged in substantial gainful activity, benefits are denied without further analysis.
>
> Step Two:  If the claimant does not have a severe impairment or combination of impairments that "significantly limits . . . physical or mental ability to do basic work activities," benefits are denied without further analysis.
>
> Step Three:  If the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the severe impairment meets or equals one of the impairments listed in the regulations, the claimant is conclusively presumed to be disabled regardless of age, education or work experience.
>
> Step Four:  If the claimant is able to perform his or her past relevant work, benefits are denied without further analysis.
>
> Step Five:  Even if the claimant is unable to perform his or her past relevant work, if other work exists in the national economy that plaintiff can perform, in view of his or her age, education, and work experience, benefits are denied.

20 C.F.R. §§ 404.1520, 416.920; *see also Heston,* 245 F.3d at 534. "If the Commissioner

makes a dispositive finding at any point in the five-step process, the review terminates."

*Colvin,* 475 F.3d at 730.

"Through step four, the claimant bears the burden of proving the existence and severity

of limitations caused by her impairments and the fact that she is precluded from performing her

6

past relevant work . . . ." *Jones*, 336 F.3d at 474, *cited with approval in Cruse*, 502 F.3d at 540. If the analysis reaches the fifth step without a finding that the claimant is not disabled, the burden transfers to the Commissioner. *Combs v. Comm'r*, 459 F.3d 640, 643 (6th Cir. 2006). At the fifth step, the Commissioner is required to show that "other jobs in significant numbers exist in the national economy that [claimant] could perform given her RFC [residual functional capacity] and considering relevant vocational factors." *Rogers*, 486 F.3d at 241 (citing 20 C.F.R. §§ 416.920(a)(4)(v), (g)).

### D.    ALJ Findings

The ALJ first noted that Plaintiff had previously filed for and been denied benefits by an ALJ decision dated January 28, 2011. Therefore, the doctrine of *res judicata* applies to the period prior to the January 28, 2011 decision.

The ALJ applied the Commissioner's five-step disability analysis to Plaintiff's claim and found at step one that Plaintiff met the insured status requirements through December 31, 2014, and that Plaintiff had not engaged in substantial gainful activity since January 29, 2011, the day after the last ALJ decision. (Tr. at 14.) At step two, the ALJ found that Plaintiff's blind in right eye/glaucoma (since 2008), status/post parainfectious neuroretinitis, hypertension, and depression/affective disorder were "severe" within the meaning of 20 C.F.R. § 404.1520. (*Id.*) At step three, the ALJ found no evidence that Plaintiff's combination of impairments met or equaled one of the listings in the regulations. (Tr. at 15-16.) At step four, the ALJ found that Plaintiff was unable to perform any past relevant work. (Tr. at 21-22.) The ALJ also found that Plaintiff was 52 years old as of the date after the last ALJ decision, which is an individual closely approaching advanced age under 20 C.F.R. § 404.1563. (Tr. at 22.) At step five, the

7

ALJ found that Plaintiff could perform a full range of work at all exertional levels with nonexertional limitations due to his loss of vision in one eye. (Tr. at 16-21.) Therefore, the ALJ found that Plaintiff was not disabled. (Tr. at 23.)

### E.    Administrative Record

The relevant medical evidence contained in the administrative record indicates that Plaintiff has been blind in his right eye since May of 2009. (Tr. at 251.)  On April 14, 2010, Dr. Daniel Zuckerbrod assessed Plaintiff with glaucoma and presbyopia of the right eye, noting that Plaintiff "will never have useful vision in his right eye" but that "[f]ortunately, the left eye is healthy and has a good prognosis." (Tr. at 256.) Therefore, Dr. Zuckerbrod recommended that Plaintiff "observe monocular precautions and have regular ophthalmologic care." (*Id.*)

Plaintiff was examined, at the request of Disability Determination Services ("DDS"), by L. Imasa, M.D., Psychiatry, on December 30, 2010. (Tr. at 281-83.)  Dr. Imasa noted that Plaintiff's gait and posture were normal, that he did not use any cane, and that he was "in fairly good contact with reality" but had "no confidence in himself." (Tr. at 282.)  Plaintiff "responded to questions spontaneously" and "with regards to his sensorium and mental capacity, generally he did fairly well except with regards to memory, he got somewhat anxious at that time." (Tr. at 282-83.)  Dr. Imasa diagnosed Plaintiff with major depressive disorder. (Tr. at 283.)  As to ability to do work-related activities, Dr. Imasa found that Plaintiff was mildly limited in his abilities to understand, remember, carry out and make judgments regarding simple instructions and work-related decisions, and that Plaintiff was moderately restricted in his ability to understand, remember, carry out and make judgments regarding

complex work-related decisions. (Tr. at 284.)  Dr. Imasa found Plaintiff has no limitations in social interaction or any other areas. (Tr. at 284-85.)

On June 17, 2011, Plaintiff was examined, at the request of DDS, by Terrance Mills, Ph.D., LP, (Tr. at 298-300.) Dr. Mills noted that Plaintiff was oriented times three but was "[d]epressed, irritable and anxious." (Tr. at 299.) Dr. Mills diagnosed Major Depressive Disorder, Moderate, and General Anxiety Disorder. (Tr. at 300.)

On September 27, 2011, Plaintiff was examined by Dr. Ramakrishna, M.D., who noted that Plaintiff has never been hospitalized for mental health issues and has never attempted suicide. (Tr. at 302.) Dr. Ramakrishna diagnosed major depression. (Tr. at 303.) On October 18, 2011, Dr. Ramakrishna noted that Plaintiff's memory was "intact[,]" that he had a "[fund of general knowledge [that was] adequate" and that his "[i]ntelligence seem[ed] to be average." (Tr. at 304.)  Dr. Ramakrishna also noted that Plaintiff's perceptions were normal, his insight and judgment were good and his impulse control was adequate. (*Id.*) In reviewing Plaintiff's medication that day, Dr. Ramakrishna indicated that Plaintiff "continues to remain depressed financially remain very unstable.  He may lose his house. He has applied for Social Security benefits . . . [and his] parents sent him money for a haircut.  He wants to look nice so he can get a job." (Tr. at 305.) A medication review dated December 14, 2011, indicated that Plaintiff "has a lot of financial issues patient is struggling on [and] denied any side effects of medication[.]" (Tr. at 307.)  On January 11, 2012, a medication review noted that Plaintiff "fe[lt] depressed [because he could] not b[u]y gifts for Christmas parties [for the] children." (Tr. at 308.) On February 15, 2012, a medication review noted that Plaintiff "has been crying [sic] for jobs anywhere [but] no one wants to hire him because of his eye problem." (Tr. at

363.) On April 11, 2012, a medication review by Dr. Ramakrishna again noted Plaintiff's financial difficulties and that Plaintiff was waiting for social security benefits. (Tr. at 361.)

On July 19, 2012, Plaintiff was examined, at the request of DDS, by Nick Boneff, Ph.D., who found that Plaintiff's intellectual functioning was in the borderline and mildly retarded ranges. (Tr. at 411.) Dr. Boneff diagnosed cognitive disorder, NOS, and "[d]epression, secondary to general medical condition (loss of eyesight in right eye)" and assessed a fair prognosis. (Tr. at 412.) Dr. Boneff found that Plaintiff was moderately limited in his ability to understand, remember, carry out, and make judgments regarding simple work-related activities and was markedly limited with respect to these abilities regarding complex work-related decisions. (Tr. at 414.) Dr. Boneff also found that Plaintiff was mildly limited in his ability to interact with others and moderately limited in his ability to respond to work situations and changes in work routines. (Tr. at 415.)

At the administrative hearing, Plaintiff testified that he lost his vision in one eye in late 2008. (Tr. at 40.) Plaintiff indicated that he sought treatment for mental health issues at Eastwood Clinic on one occasion in 2010, and then eventually treated with Dr. Rama Krishna after September, 2011. (Tr. at 40-42.) Plaintiff testified that he lives alone, fears being in public places and that this fear has been prominent for "[a] couple years" and that it was related to his lack of vision in one eye. (Tr. at 43-44.) Plaintiff stated that he receives pension benefits in the amount of $2600 per month. (Tr. at 44.) When the ALJ inquired why Plaintiff was having such financial difficulties, e.g., losing his home, Plaintiff responded that he has "got a high gas bill. My mortgage and a home equity loan." (Tr. at 44-45.) Plaintiff reads the local newspaper, keeps up with current events, and drives unless there is high traffic or bad weather.

10

(Tr. at 45-46.)  Plaintiff further testified that he cooks for himself, makes his bed, does laundry, and walks around the neighborhood a couple times a week but that his adult sons help with mowing the lawn. (Tr. at 46-48.)  Plaintiff visits with family and has a friend Herbie that comes over "every now and then." (Tr. at 49.)  In addition, Plaintiff visits his parents who live around twenty miles away "a couple times a year" for "[f]our or five days." (Tr. at 50.)

When questioned by his attorney, Plaintiff stated that he does not do much reading beyond ten minutes because it "strain[s] my good eye." (Tr. at 51.)  Plaintiff also testified that he can lift a gallon of milk but that if he bends over or lifts a "heavy weight" that such activities exert pressure in his eye. (Tr. at 52.)  When asked to clarify what a heavy weight is, Plaintiff responded to the ALJ that he can "lift the little kid that comes next door, I think he weighs around 30 pounds." (Tr. at 52-53.)  When asked whether he could lift him repeatedly, Plaintiff responded that he had "[n]ever tried." (Tr. at 53.) Plaintiff indicated that he can sit for a "couple hours until I have to go to the bathroom" and that he does not have any trouble standing and walking. (Tr. at 53.)

The ALJ asked the vocational expert ("VE") at the hearing to consider an individual with Plaintiff's background with:

> no exertional restrictions, but because of loss of vision in one eye, this person would be restricted to - - restricted from any work at unprotected heights.  And that would include no climbing of any ladders, ropes or scaffolds. No more than occasional ramps or stairs.
>
> This person should be restricted from any hazards, which includes no moving machinery and no work around or with sharp objects such as knives and the like. And no driving jobs. This person should also be restricted from any concentrated exposure to dust or fumes, such as bleach or cleaning solutions.

(Tr. at 60-61.)  The VE responded that such a person could not return to any of Plaintiff's prior work but could perform the 12,000 medium level jobs available in Southeastern Michigan, including 3500 visual inspector jobs, and 4500 packaging jobs, and the 8600 light exertional jobs available in Southeastern Michigan, including 8600 assembly jobs. (Tr. at 61-62.)  The VE indicated that the inspection jobs do not involve the general public. (Tr. at 62.)  When asked to include a limitation on no more than occasional contact with coworkers or supervisors, the number of jobs available at the medium level would be reduced to 5500 from 12,000, and further added that this limitation would not affect either the inspection or packaging jobs. (Tr. at 62-63.)  A production requirement, such as a job using a conveyer belt, would impact only the teamwork of assembly. (Tr. at 63-64.) The VE also indicated that limiting lifting to thirty pounds would not affect medium or light work. (Tr. at 65.)

### F.    Analysis and Conclusions

### 1.    Legal Standards

"No findings of fact or decision of the Commissioner of Social Security shall be reviewed by any person, tribunal, or governmental agency except as herein provided . . . ." 42 U.S.C. § 405(h). As a result, a claimant's subsequent application for benefits may be barred by the doctrine of *res judicata*, where the Commissioner has made a final decision or determination on the claimant's rights to benefits based upon the same facts and issues. 20 C.F.R. § 404.957(c)(1).

In this circuit, if a claimant does not appeal an adverse disability determination, nondisability as of the date of decision is established as a matter of *res judicata*. *Carver v. Sec'y of Health & Human Servs.*, 869 F.2d 289 (6th Cir. 1989); *Wills v. Sec'y of Health &*

*Human Servs.*, 802 F.2d 870, 871 n.2 (6th Cir. 1986); *Gibson v. Sec'y of Health & Human Servs.*, 678 F.2d 653, 654 (6th Cir. 1982); *see also Spaulding v. Comm'r of Soc. Sec.*, No. 08-5447, 2009 WL 361397 (6th Cir. Feb. 12, 2009). Therefore, ALJ Erickson's decision, which District Judge Gerald E. Rosen dismissed and which was not appealed, is *res judicata* as to the issue of whether Plaintiff was disabled as of January 28, 2011, the date of ALJ Erickson's decision. (Tr. at 79; E.D. Mich. Case No. 12-10193, Doc. 13.)  Accordingly, the relevant evidence will be limited to that pertaining to January 29, 2011 forward.

The ALJ determined that during the time Plaintiff qualified for benefits, he possessed the residual functional capacity to perform a full range of work at all exertional levels with nonexertional limitations due to his loss of vision in one eye. (Tr. at 16-21.)

After review of the record, I suggest that the ALJ utilized the proper legal standard in his application of the Commissioner's five-step disability analysis to Plaintiff's claim. I turn next to the consideration of whether substantial evidence supports the ALJ's decision.

### 2.    Substantial Evidence

Plaintiff contends that the ALJ's decision is not supported by substantial evidence. (Doc. 11.)  As indicated above, if the Commissioner's decision applied the correct legal standards and is supported by substantial evidence, the decision must be affirmed even if this Court would have decided the matter differently and even where substantial evidence supports the opposite conclusion. 42 U.S.C. § 405(g);  *McClanahan*, 474 F.3d at 833; *Mullen*, 800 F.2d at 545. In other words, where substantial evidence supports the ALJ's decision, it must be upheld.

Specifically, Plaintiff argues that the ALJ failed to properly assess Plaintiff credibility, failed to properly evaluate the medical records, thereby forming an inaccurate hypothetical that did not accurately portray Plaintiff's impairments. (Doc. 10 at 6-15.)

a.     **Waiver/unexplained boilerplate language**

I first note, as did the Commissioner, that although Plaintiff's brief includes boilerplate language regarding medical source opinions, Plaintiff does not identify any medical source whose opinion he contends was improperly weighted by the ALJ. (Doc. 12 at 13.)  Case law supports finding waiver where the claimant does not identify a treating source or treating opinion the ALJ improperly evaluated. *See Kuhn v. Washtenaw Cnty.*, 709 F.3d 612, 624 (6th Cir. 2013) ("This court has consistently held that arguments not raised in a party's opening brief, as well as arguments adverted to in only a perfunctory manner, are waived."); *Aarti Hospitality*, *L.L.C. v. City of Grove City, Ohio*, 350 F. App'x 1, 11 (6th Cir. 2009) ("After setting forth the applicable law on their due process claim, plaintiffs devote one sentence in their appellate brief to 'arguing' why the district court's judgment should be reversed . . . . Accordingly, we deem plaintiffs' appeal of their due process claim forfeited."); *Fielder v. Comm'r of Soc. Sec.*, No. 13-10325, 2014 WL 1207865, at *2 (E.D. Mich. Mar. 24, 2014) (holding that claim on appeal from ALJ's decision was waived because plaintiff referred to it in a perfunctory manner); *Preston v. Comm'r of Soc. Sec.*, No. 12-13327, 2013 WL 4550512, at *7 (E.D. Mich. Aug. 28, 2013) (finding waiver where "Plaintiff failed to identify a specific medical opinion the ALJ erred in evaluation") (adopting report and recommendation); *Perry ex rel. King v. Comm'r Soc. Sec.*, No. 12-cv-14439, 2013 WL 3328523, at *7 (E.D. Mich. July 2, 2013) ("Plaintiff cites to case law that ALJs must provide good reasons for discounting the

14

opinions of the claimant's treating physicians, but she has not identified any treating physician opinion that she believes the ALJ overlooked or improperly weighed.") (adopting report and recommendation). Plaintiff here fails to list any physician who merits treating source status, even though a few might, and he does not hint at which treating source opinions the ALJ bungled. (Doc. 9 at 7-14.)  I will therefore proceed to address the arguments actually raised.

**b.     Plaintiff's Credibility, and the RFC**

The social security regulations establish a two-step process for evaluating subjective symptoms, including pain. 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2. The ALJ evaluates complaints of disabling pain by confirming that objective medical evidence of the underlying condition exists. The ALJ then determines whether that condition could reasonably be expected to produce the alleged pain or whether other objective evidence verifies the severity of the pain. *See* 20 C.F.R. § 404.1529; SSR 96-7p, 1996 WL 374186, at *2; *Stanley v. Sec'y of Health & Human Servs.*, 39 F.3d 115, 117 (6th Cir. 1994); *Felisky*, 35 F.3d at 1038-39; *Duncan v. Sec'y of Health & Human Servs.*, 801 F.2d 847, 853 (6th Cir. 1986). Finally, the ALJ ascertains the extent of the work-related limitations by determining the intensity, persistence, and limiting effects of the claimant's symptoms. SSR 96-7p, 1996 WL 374186, at *2.

While "'objective evidence of the pain itself'" is not required. *Duncan*, 801 F.2d at 853 (quoting *Green v. Schweicker*, 749 F.2d 1066, 1071 (3d Cir. 1984)), a claimant's description of his physical or mental impairments alone is "not enough to establish the existence of a physical or mental impairment," 20 C.F.R. § 404.1528(a). Nonetheless, the ALJ may not disregard the claimant's subjective complaints about the severity and persistence of the pain simply because

15

they lack substantiating objective evidence. SSR 96-7p, 1996 WL 374186, at *1. Instead, the

absence of objective confirming evidence forces the ALJ to consider the following factors:

    (i)    [D]aily activities;

    (ii)    The location, duration, frequency, and intensity of . . . pain;

    (iii)    Precipitating and aggravating factors;

    (iv)    The type, dosage, effectiveness, and side effects of any medication . . . taken to alleviate . . . pain or other symptoms;

    (v)    Treatment, other than medication, . . . received for relief of . . . pain;

    (vi)    Any measures . . . used to relieve . . . pain.

20 C.F.R. § 404.1529(c)(3); *Felisky*, 35 F.3d at 1039-40; SSR 96-7p, 1996 WL 374186, at *3.

Furthermore, the claimant's work history and the consistency of her subjective statements are

also relevant. 20 C.F.R. § 404.1527(c); SSR 96-7p, 1996 WL 374186, at *5.

    The claimant must provide evidence establishing her RFC. The statute lays the

groundwork for this, stating, "An individual shall not be considered to be under a disability

unless [she] furnishes such medical and other evidence of the existence thereof as the Secretary

may require." 42 U.S.C. § 423(d)(5)(A); *see also Bowen*, 482 U.S. at 146 n.5. The RFC "is the

most [she] can still do despite [her] limitations," and is measured using "all the relevant

evidence in [the] case record." 20 C.F.R. § 404.1545(a)(2). The hypothetical is valid if it

includes all credible limitations developed prior to step five. *Casey v. Sec. of Health & Human

Servs.*, 987 F.2d 1230, 1235 (6th Mich. 1993); *Donald v. Comm'r of Soc. Sec.*, No. 08-14784-

BC, 2009 WL 4730453, at *7 (E.D. Mich. Dec. 2009).

    As to Plaintiff's credibility, the ALJ properly considered the requisite factors (Tr. at 17-

18) and concluded that although Plaintiff's medically determinable impairments could

reasonably be expected to cause the alleged symptoms, Plaintiff's statements concerning the intensity, persistence and limiting effects of these symptoms were not credible to the extent they were inconsistent with the ALJ's residual functional capacity assessment. (Tr. at 18.)  The ALJ's residual functional capacity assessment and attendant hypothetical noted that due to loss of vision, Plaintiff would be restricted from work at unprotected heights, including no climbing of ladders, ropes or scaffolds; no more than occasional climbing of ramps or stairs; no exposure to hazards, which include no moving machinery, and no work around or with sharp objects, such as knives; no driving; no concentrated exposure to dust or fumes, such as bleach or cleaning solutions; no work with the general public and no more than occasional contact with coworkers and supervisors; and no line or conveyor type work where the work is dependent on external forces. (Tr. at 17.) I suggest that these limitations fully account for Plaintiff's blindness in his right eye and that the jobs considered by the ALJ through the VE's testimony were limited to simple, unskilled jobs that would accommodate any of Plaintiff's mental limitations. (Tr. at 60-65.)

I further suggest that the ALJ's credibility findings and RFC findings are supported by substantial evidence. Plaintiff was noted by his treating physician, Dr. Ramakrishna, to have an intact memory, adequate knowledge and intelligence, and normal perceptions, insight and judgment. (Tr. at 304.)  Dr. Ramakrishna's medication reviews consistently noted financial, rather than cognitive or emotional, issues, and noted that Plaintiff was trying to get a job. (Tr. at 305, 308, 361, 363.)  Dr. Ramakrishna did not ever express surprise or opposition to the idea that Plaintiff should work.

17

I further suggest that the hypothetical posed to the VE was in harmony with the objective record medical evidence and Plaintiff's own statements that he reads the local newspaper, keeps up with current events, drives, cooks for himself, makes his bed, does laundry, walks around the neighborhood a couple times a week, visits with family and a friend, can lift thirty pounds, can sit for a "couple hours until I have to go to the bathroom" and does not have any trouble standing and walking. (Tr. at 45-53.) *See Griffeth v. Comm'r of Soc. Sec.*, 217 F. App'x 425, 429 (6th Cir. 2007); *Varley v. Sec'y of Health & Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).

### 3.    Conclusion

For all these reasons, after review of the record, I suggest that the decision of the ALJ, which ultimately became the final decision of the Commissioner, is within that "'zone of choice' within which decisionmakers may go either way without interference from the courts," *Felisky*, 35 F.3d at 1035 (quoting *Mullen*, 800 F.2d at 545), as the decision is supported by substantial evidence.

## III.    REVIEW

Pursuant to Rule 72(b)(2) of the Federal Rules of Civil Procedure, "[w]ithin 14 days after being served with a copy of the recommended disposition, a party may serve and file specific written objections to the proposed findings and recommendations. A party may respond to another party's objections within 14 days after being served with a copy." Fed. R. Civ. P. 72(b)(2). *See also* 28 U.S.C. § 636(b)(1). Failure to file specific objections constitutes a waiver of any further right of appeal. *Thomas v. Arn*, 474 U.S. 140, 106 S. Ct. 466, 88 L. Ed.2d 435 (1985); *Howard v. Sec'y of Health & Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United*

18

*States v. Walters*, 638 F.2d 947 (6th Cir. 1981). The parties are advised that making some objections, but failing to raise others, will not preserve all the objections a party may have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to E.D. Mich. LR 72.1(d)(2), a copy of any objections is to be served upon this magistrate judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the Court determines that any objections are without merit, it may rule without awaiting the response.

Date:  September 23, 2014                 /S PATRICIA T. MORRIS
                                          Patricia T. Morris
                                          United States Magistrate Judge

## CERTIFICATION

I hereby certify that this Report and Recommendation was electronically filed this date using the Court's CM/ECF system which delivers a copy to all counsel of record.

Date:  September 23, 2014       By___s/Jean L. Broucek_____
                                Case Manager to Magistrate Judge Morris